■ In the Matter of HOWARD J. KIRSCHNER, Petitioner, v RICHARD P. MILLS, as Commissioner of the New York State Education Department, et al., Respondents. [711 NYS2d 65] —Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law § 6510 [5]) to review a determination of respondent Board of Regents which, inter alia, suspended petitioner's license to practice dentistry in New York for two years.

Petitioner, licensed as a dentist in New York since 1961, was served in July 1996 with a notice of hearing and an August 1995 statement of charges by the Office of Professional Discipline of the Education Department (hereinafter OPD) charging him with four specifications of professional misconduct, including (1) practicing dentistry fraudulently (*see*, Education Law § 6509 [2]), (2) committing unprofessional conduct by failing to use scientifically accepted infection prevention techniques (*see*, Education Law § 6509 [2]; 8 NYCRR 29.2 [a] [13]), (3) practicing dentistry with gross incompetence (Education Law § 6509 [2]), and (4) practicing dentistry with incompetence on more than one occasion (*see*, Education Law § 6509 [2]). The charges related to independent medical examinations petitioner conducted and written medical reports he prepared for insurance companies concerning insurance claimants F.M. in June 1992, S.L. in September 1992 and G.G. in February 1987, and specifically his statements and findings pertaining to the condition known as temporomandibular joint disorder (hereinafter TMJ) with regard to each patient.

Thirteen days of hearings were conducted before a hearing panel of the State Board for Dentistry (hereinafter the Panel) at which petitioner, the patients and numerous experts testified and both sides introduced voluminous exhibits. The Panel determined that petitioner was guilty of all four specifications, sustaining several factual allegations for each, and recommended imposition of a fine of $500 for the finding of guilt on the second specification, concurrent fines of $10,000 for the guilty finding on the first, third and fourth specifications, concurrent two-year suspensions for each guilty finding on the first, third and fourth specifications, with the last 18 months stayed, and a two-year probationary term which would include a course of reeducation in the area of ethics.

Upon their review of the Panel's recommendation, findings and determinations, the Regents Review Committee (hereinafter the Review Committee) (*see*, Education Law § 6510 [4] [a]) recommended a finding of not guilty as to the first specification charging fraud, thereby eliminating certain enumerated findings, and a concomitant modification of the recommended penalty including staying the entire two-year suspension period, with the remaining charges and findings to be upheld.

Final administrative review by respondent Board of Regents (*see*, Education Law § 6510 [4] [c]) resulted in a vote and order which adopted the Review Committee's recommendations as to the findings and determinations but rejected any modification of the penalty proposed by the Panel, and imposed the original

penalty which included only an 18-month stay of petitioner's two-year license suspension.

Petitioner commenced this CPLR article 78 proceeding seeking to annul the Board of Regents' determination, claiming that the Board lacked subject matter jurisdiction, that its determination was arbitrary and capricious, an abuse of discretion and not supported by substantial evidence, that petitioner was denied due process and his right to freedom of speech, and that the Panel's refusal to reopen the record to admit evidence of bias was arbitrary and capricious and an abuse of discretion.

We turn first to petitioner's jurisdictional argument. Petitioner asserts that respondents did not have authority to prosecute him for his statements in reports written as a result of independent medical examinations he performed at the request of insurance companies. He argues that such prosecution constitutes regulation of expression of his views on a matter of scientific controversy, and that his IME reports do not fall within the definition of practice of dentistry contained in Education Law § 6601 nor amount to unprofessional conduct as defined in 8 NYCRR 29.1, 29.2 or 29.5. The practice of dentistry is defined in Education Law § 6601 in pertinent part as follows: "diagnosing, treating, operating or prescribing for any disease, pain, injury, deficiency, deformity or physical condition of the human mouth, including the teeth, alveolar process, gums or jaws, and adjacent tissues * * * [and] may include performing physical evaluations in conjunction with the provision of dental treatment." We find that petitioner's examination of the patients referred to him because he was a licensed professional practicing dentistry, and his issuance of written reports acting in that capacity which were intended to influence treatment authorization decisions by the referring companies pertaining to the TMJ claims of those patients, to be the type of professional activity falling within the scope of the review authority of respondents who are charged with regulating the professions in this State.

We note that other States have held medical professionals subject to professional misconduct proceedings for such "non-treating" acts as giving false testimony as a medical expert in a medical malpractice proceeding (*see, Joseph v District of Columbia Bd. of Medicine*, 587 A2d 1085 [DC]), a decision authorizing or denying precertification of medical procedures for a medical insurer (*see, Murphy v Board of Med. Examiners*, 190 Ariz 441, 949 P2d 530) and, in this State for false and exaggerated medical reports and bills (*see, Matter of Wassermann v Board of Regents*, 11 NY2d 173). Given respondents'

mandate "to protect the welfare of the general public who deal with State-licensed practitioners" (*Matter of Morfesis v Sobol*, 172 AD2d 897, 899, *lv denied* 78 NY2d 856), we hold petitioner's argument that respondents lacked subject matter jurisdiction to be without merit.

We next turn to petitioner's argument that the Board of Regents' determination of his guilt, which must be based upon a preponderance of the evidence (*see*, Education Law § 6510 [3] [c]), was not supported by substantial evidence, the resolution of which is the limit of our review in this type of proceeding (*see*, *Matter of Cohen v Mills*, 271 AD2d 826; *Matter of Moore v State Bd. for Professional Med. Conduct*, 258 AD2d 837; *Matter of Weisenthal v New York State Bd. of Regents*, 249 AD2d 712, *lv denied* 92 NY2d 808). For the evidence to be considered substantial in cases such as this which allege gross incompetence and incompetence on more than one occasion in the practice of dentistry, it must include sufficient expert testimony demonstrating that petitioner deviated from accepted standards of dental practice (*see*, *Matter of Weisenthal v New York State Bd. of Regents*, *supra*, at 713; *Matter of Loffredo v Sobol*, 195 AD2d 757, *lv denied* 82 NY2d 658). Issues of witness credibility and the weight to be accorded the evidence are the province of the Panel (*see*, *Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990, 990-991).

Petitioner was found guilty of that portion of the second specification charging him with failing to wear protective gloves while performing an IME on patient S.L. This was supported by testimony from S.L., whom the panel found to be "direct, forthright and credible", that petitioner did not wear gloves during the IME. The violation of accepted practice was supported by the testimony of petitioner's own expert, John Dodes, a dentist, who opined that it was necessary to wear gloves "anytime you put your hands on a patient". Accordingly, we find the requisite substantial evidence to sustain this charge.

We do not reach the same conclusion with regard to the third specification charging petitioner with practicing dentistry with gross incompetence or the fourth specification charging him with practicing dentistry with incompetence on more than one occasion. Gross incompetence requires egregiously bad conduct (*see*, *Matter of Berger v Board of Regents*, 178 AD2d 748, 751, *lv denied* 80 NY2d 918, *cert denied* 507 US 1018). The charges found to constitute gross incompetence and incompetence on more than one occasion are premised on statements made by petitioner in IME reports pertaining to examinations of F.M., S.L. and G.G., and involved six statements of his opinion re-

lated to the etiology and existence, or lack thereof, of TMJ-related complaints, by these examinees. Those statements of opinion read as follows:

(1) that if pain is present in the absence of jaw movement then it is wrong to attribute the primary source of this pain to the temporomandibular joint or function thereof (Third Specification, par I [a]);

(2) that a panoramic x-ray is of no diagnostic benefit in the study of the temporomandibular joint (Third Specification, par I [c]);

(3) that trauma to the joint does not constitute a valid basis for dysfunction of the temporomandibular joint (Third Specification, par II [a]);

(4) that bilateral pain in the absence of bilateral trauma thereto is always pain that is referred from a primary source that is common to both the right and left sides of the jaw (Third Specification, par II [b]);

(5) that an inferior and anterior positioning of the condyle is one which lends itself to hypermobility (Third Specification, par III [b]); and

(6) that orthodontic treatment in childhood resulted in condylar misarticulation (Third Specification, par III [c]).

Respondents' determination that petitioner's opinions deviated from the accepted standard of care necessarily required expert medical testimony (*see, Matter of Loffredo v Sobol*, 195 AD2d 757, *supra*). OPD presented the testimony of two dental experts, Jay Goldman, who authored G.G.'s complaint against petitioner and assisted F.M. and S.L. (both his patients) in the preparation of their complaints, and Ira Klemons, who appears from competent proof in this record to have breached the confidentiality of the proceeding. In response, in addition to his testimony, petitioner presented the testimony of his own dental experts, Dodes, a private practitioner and former president of the New York Chapter of Council Against Health Care Fraud, and Steven Ashman, director of oral and maxillofacial surgery at Johns Hopkins Medical Institutions.

Our review of the entire record reveals that respondents' determinations of guilt on the third and fourth specifications premised on petitioner's statements of opinion scattered throughout three separate IME reports are not supported by substantial evidence. Initially we agree with petitioner's argument that his alleged inculpatory opinions appear to be extracted from his lengthy IME reports without consideration of each report as a whole, a practice we have deemed impermis-

sible in the past (*see, Matter of Choudhry v Sobol*, 170 AD2d 893, 895; *Matter of Callahan v University of State of N. Y.*, 129 AD2d 241). The record also reflects sharp disagreement of the parties' experts as to the professional competence of each of petitioner's opinions. We find that such dichotomy of opinion, in the context of this case, establishes the existence of a bona fide dispute or controversy within the profession unresolved by the proof in this record. In the absence of substantial proof that petitioner's statements of opinion are without sound scientific basis together with the fact that the principal components of the charges against petitioner were impermissibly culled from his IME reports (*see, e.g., Matter of Callahan v University of State of N. Y., supra*, at 244; *cf., Matter of Brown v University of State of N. Y.*, 147 AD2d 784, 786), this Court rejects respondents' determination of guilt with respect to specifications three and four. Accordingly, those specifications are annulled.

In light of the foregoing, we decline to address petitioner's further contentions. Additionally, in light of our determination we do not find remittal to respondent for determination of a penalty necessary as a separate penalty was imposed based upon the finding of guilt on the second specification and a different penalty was imposed based on the findings of guilt for the third and fourth specification.

Mercure, J. P., Crew III, Mugglin and Rose, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of paragraphs I (a), I (c), II (a), II (b), III (b) and III (c) of the third specification and the fourth specification, and imposed penalties thereon; petition granted to that extent; and, as so modified, confirmed.